UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-88-F

| | | |
|---|---|---|
| BARBARA L. CHRISTMAS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for summary judgment [DE-45, -49] and various evidentiary motions [DE-55, -70, -72]. The motions have been fully briefed and are ripe for resolution. For the reasons that follow, the Plaintiff's motion for summary judgment [DE-49] is ALLOWED in part and DENIED in part and the Defendant's motion for summary judgment [DE-45] is ALLOWED in part and DENIED in part. Plaintiff's motion to file evidentiary documents out of time [DE-55] is ALLOWED, but her motion to deem statements admitted by Nationwide [DE-70] is DENIED. Plaintiff's motion to exclude affidavit and testimony of Defendant's experts [DE-72] is DENIED.

## I. FACTUAL BACKGROUND

On March 12, 2009, Plaintiff Barbara Christmas's home was partially destroyed in a fire. The Franklinton, North Carolina home had four bedrooms, three baths and was over 2,447 square feet. The parties dispute whether the home was a total loss. Before the fire, Christmas purchased home insurance coverage from Nationwide and she was current on her premiums at the time of the fire. The policy provided for a total dwelling cost replacement limit of $213,905, as well as

coverage for living expenses and personal property. Christmas promptly notified Nationwide of the fire, who examined the property and assigned a replacement value of $94,842.88.

Christmas inherited the residence from her mother, Gladys Davis. Prior to her death, Ms. Davis obtained a reverse mortgage from Financial Freedom, which became due upon Ms. Davis's death. When Christmas inherited the property, she failed to make any payments on the mortgage debt and Financial Freedom began foreclosure proceedings. The foreclosure sale was set for July 29, 2009, over four months after the fire. Inexplicably, Financial Freedom bid the full amount of the outstanding debt ($129,222.00) at the foreclosure sale, thereby extinguishing any interest it had in the property.

Before the foreclosure sale, Nationwide issued a check in the amount of $94,842.89, payable to both Financial Freedom and Christmas to cover the replacement cost of the home. The check stated it would be valid for 180 days. At some point after receiving the check, Christmas contacted Nationwide and asked it to remove Financial Freedom's name from the check. This aroused Nationwide's suspicions, and upon further investigation Nationwide discovered the home was in foreclosure.

When Nationwide received this information, it stopped payment on the check prior to the 180-day expiration period and initiated an investigation regarding how the dwelling replacement payment should be distributed. Nationwide ultimately determined Christmas was not entitled to the replacement cost payment. Nationwide reasoned that because the mortgage debt exceeded the replacement cost, Christmas had no insurable interest in the property at the time of the loss. Nationwide noted that Financial Freedom would have been entitled to the proceeds, but since it extinguished its interest in the property after the fire, Nationwide was not required to pay the

2

dwelling cost replacement to anyone. Nationwide did pay Christmas approximately $91,600 for the loss of her personal property and for living expenses. However, Nationwide, after approximately seven months, stopped providing the living expenses payments. While awaiting resolution of this matter, Christmas has been living with various relatives. Christmas has been forced to live apart from her husband because their relatives are not able to accommodate both of them in the same residence. When Nationwide ultimately informed Christmas that she would not receive the dwelling replacement payment, this breach of contract and unfair and deceptive trade practices suit followed. Christmas seeks compensatory and punitive damages, as well as attorney's fees.

## II. DISCUSSION

### A. Standard of Review

At summary judgment, the court must examine the evidence presented by both parties and determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Where the moving party shows that the evidence is so one-sided that it should prevail as a matter of law, the burden shifts to the nonmoving party to come forward with affidavits, depositions, answers to interrogatories, or other evidence demonstrating that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Matsushita*, 475 U.S. at 587; *Pension Benefit Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th

3

Cir. 2005). An issue of fact is genuine if a reasonable jury could find for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248. A fact is material if proof of the fact might affect the outcome of the case under the substantive law. *Id.* The facts should be viewed in the light most favorable to the nonmoving party and all reasonable inferences should be made in favor of the nonmoving party. *Id.* at 255; *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996).

**B. The Contract Language and the Parties' Insurable Interests**

This case presents the issue of who (if anyone) receives the dwelling replacement insurance payment in the event a home in foreclosure is destroyed in a fire but the mortgagee nevertheless bids the full amount of the mortgage debt at a subsequent foreclosure sale, thereby extinguishing its interest in the property. Nationwide argues that under the insurance contract, Christmas's recovery is limited to her insurable interest at the time of the loss. At that time, according to Nationwide, Christmas had no insurable interest in the property because she owed more on the property than Nationwide's adjuster determined was the replacement cost. The insurance contract contains both a "mortgage clause" and an "insurable interest clause." The mortgage clause provides, "if a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear." Insurance Policy [DE-45-1]; Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [DE-48] at 2-3. The insurable interest clause, in turn, provides "[e]ven if more than one person has an insurable interest in the property covered, we will not be liable in any one loss: (1) [t]o an insured for more than the amount of such insured's interest at the time of loss; or (2) [f]or more than the applicable limit of liability." Insurance Policy [DE-45-1]; Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [DE-48] at 2.

4

The parties do not dispute that North Carolina law governs this dispute. In North Carolina, "[a]n 'insurable interest' arises if the peril against which insurance is made would bring upon the named insured, by immediate and direct effect, some pecuniary loss or if the named insured would derive some pecuniary benefit from the preservation of the insured property." *Jerome v. Great Am. Ins. Co.*, 52 N.C. App. 573, 578, 279 S.E.2d 42, 45 (1981) (citations omitted). Importantly, "a grantor retains an insurable interest in property after its conveyance where he remains personally liable for a debt secured by the insured property . . . ." *Id.*; *see also Tech Land Dev. Inc. v. South Carolina Ins. Co.*, 57 N.C. App. 566, 568, 291 S.E.2d 821, 823 (1982) ("Both the mortgagor and mortgagee have an insurable interest in mortgaged property. The mortgagor's interest is in the full value of the property. He has an equitable right of redemption which may be exercised from the time of default until the expiration of the ten-day upset bid period in the event of foreclosure.").

In *Tech Land*, the North Carolina Court of Appeals addressed the distribution of insurance proceeds when a home in foreclosure is damaged by fire. *Id.* at 569-70, 291 S.E.2d at 823-24. As relevant to this case, when a home is damaged prior to the foreclosure sale but the mortgagee purchases the property at the foreclosure sale anyway, the Court of Appeals held, "courts allow the purchasing mortgagee to retain under the mortgage clause [of the insurance contract] those proceeds amounting to any deficiency [between the debt amount and the purchase price] after foreclosure. The mortgagor recovers the remainder of the proceeds." *Id.* at 569, 291 S.E.2d at 823. Thus, in the event a mortgagee successfully bids the full amount of the mortgage debt at the foreclosure sale despite the fire damage, there is no "deficiency" it can collect from the insurance proceeds and its interest in the property is extinguished. This is the general rule.

5

*See, e.g., Lee v. Royal Indem. Co.*, 108 F.3d 651, 653-54 (6th Cir. 1997) (Tennessee law);

*Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 856 (5th Cir. 1979) (discussing rule

in various state jurisdictions); *Rosenbaum v. Funcannon*, 308 F.2d 680, 684 (9th Cir. 1962)

(California law); *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 291 Ala. 193, 198, 279 So.2d 460,

464-65 (1973) (Alabama law); *Rodriguez v. First Union Nat'l Bank*, 61 Mass. App. Ct. 438, 442-

43, 810 N.E.2d 1282, 1286 (2002) (Massachusetts law); *Countrywide Home Loans v. Allstate

Ins. Co.*, 246 S.W.3d 515, 517 (Mo. App. w.d. 2007) (Missouri law).

## C. Analysis

In this case, there is no dispute Financial Freedom extinguished its interest at the

foreclosure sale by bidding the full amount of the debt despite the fire damage. The issue is

whether Christmas, also a named insured on the policy, should receive the insurance proceeds in

these circumstances. Nationwide maintains that *Tech Land* stands for the proposition that

Christmas had no insurable interest at the time of the loss because her mortgage debt exceeded

the replacement cost.[1] According to Nationwide, because Financial Freedom was entitled to the

entire amount of the insurance proceeds at the time of the loss under *Tech Land*, that means

Christmas had no insurable interest with respect to the dwelling replacement payment.

Nationwide also argues Christmas would be unjustly enriched if the mortgagee cancelled her

debt and she received the replacement payment. Christmas, for her part, maintains that *Tech

Land* requires that the dwelling payment be paid to her in full, noting that *Tech Land* requires

that the "remainder" of the insurance proceeds goes to the mortgagor after the mortgagee receives

---

[1] The parties also dispute the cost of replacing or repairing the property, which Nationwide
determined was $94,842.88. Christmas maintains the replacement amount is over $200,000. This issue
is addressed below.

6

its deficiency. *Tech Land*, 57 N.C. App. at 568, 291 S.E.2d at 823.

In the court's view, *Tech Land* does not support Nationwide's position that Christmas's insurable interest is limited to her equity in the property (the difference between the value of the property and the debt owed on the mortgage). *Tech Land* simply does not address the issue presented by this case, which is who should receive the full insurance payment in the event the mortgagee extinguishes its interest in the property after it is damaged. The *Tech Land* discussion of the mortgagee's deficiency interest in the payment applies when the mortgagee does not bid the entire amount of the debt at the foreclosure sale. *Tech Land*, 57 N.C. App. at 569, 291 S.E.2d at 823. In that event, the mortgagee is entitled to the deficiency from the insurance proceeds. *Id.* But that does not mean the mortgagor's insurable interest is limited solely to her equity in the property. In fact, *Tech Land* specifically contemplated that both the mortgagor and mortgagee retain insurable interests in the property simultaneously. *See Tech Land*, 57 N.C. App. at 568, 291 S.E.2d at 823 ("Both the mortgagor and mortgagee have an insurable interest in mortgaged property. The mortgagor's interest is in the full value of the property. He has an equitable right of redemption which may be exercised from the time of default until the expiration of the ten-day upset bid period in the event of foreclosure."); *see also Jerome*, 52 N.C. App. at 578, 279 S.E.2d at 45 ("[A] grantor retains an insurable interest in property after its conveyance where he remains personally liable for a debt secured by the insured property . . . ."). Of course, an insurance company is not required to pay both the mortgagor and the mortgagee when the property is damaged. But there is no risk of double payment in this case because Financial Freedom extinguished its interest at the foreclosure sale.

Other courts have rejected Nationwide's position. In *Lee v. Royal Indemnity Co.*, 108

7

F.3d 651 (6th Cir. 1997), the Sixth Circuit considered whether an insurance company must pay insurance proceeds to a mortgagor after the mortgagee extinguished its interest at a post-fire foreclosure sale. Rejecting the precise argument Nationwide advances here, the Sixth Circuit held, "once a mortgagee's interest in the policy is extinguished through subsequent acts, any interest it had in the policy reverts back to the policy holder or other persons entitled to collect under the policy." *Id.* at 654-55. The *Royal Indemnity* court also convincingly rejected the insurance company's argument that the parties' relative interests in the insurance proceeds were "fixed" as of the time of the loss:

> [i]f the parties interests are forever fixed at the time of the loss, Royal Indemnity would still be liable to [the mortgagee], a proposition that is not only counter to [established law that a mortgagee extinguishes its right to insurance proceeds by bidding the full amount of the debt at the foreclosure sale], but also contrary to Royal Indemnity's own position, which is that it is entitled to a reduction of the payout, not that it owes [the mortgagee] the money.

*Id.* at 656. This is precisely the self-contradictory position that Nationwide takes in this case. It argues the interests are fixed as of the time of the loss, but that Financial Freedom's subsequent acts can extinguish its interest. That is simply illogical. As in *Royal Indemnity*, when Financial Freedom's subsequent acts extinguished its interest in the proceeds, Financial Freedom's interest in the proceeds at the time of the loss reverts back to Christmas, the other named insured on the policy.

Nationwide argues the contract language overcomes the *Royal Indemnity* holding. As noted above, the contract provides in relevant part that "[e]ven if more than one person has an insurable interest in the property covered, we will not be liable in any one loss: (1) [t]o an insured for more than the amount of such insured's interest at the time of loss." Insurance Policy [DE-

8

45-1]; Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [DE-48] at 2. This language does not sufficiently distinguish this case from *Royal Indemnity*. As an initial matter, this is not a case where "more than one person has an insurable interest in the property covered." Financial Freedom has extinguished its insurable interest in the property and therefore there is no issue with apportioning payment among two named insureds in this case. The phrase "we will not be liable in any one loss to an insured for more than the amount of such insured's interest at the time of the loss" is only applicable when "more than one person has an insurable interest." *See* Insurance Policy [DE-45-1]; Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [DE-48] at 2.

Furthermore, Christmas had an insurable interest at the time of the loss. North Carolina law contemplates that two persons (or entities) may have an insurable interest in the same property simultaneously. *See Tech Land*, 57 N.C. App. at 568, 291 S.E.2d at 823 ("Both the mortgagor and mortgagee have an insurable interest in mortgaged property. The mortgagor's interest is in the full value of the property."); *Jerome*, 52 N.C. App. at 578, 279 S.E.2d at 45 ("[A] grantor retains an insurable interest in property after its conveyance where he remains personally liable for a debt secured by the insured property . . . ."). As these cases make clear, Christmas's insurable interest is not limited to her equity in the property; she retained an insurable interest "in the full value of the property" at the time of the loss. *Tech Land*, 57 N.C. App. at 568, 291 S.E.2d at 823. While her interest may have been subordinate to the mortgagee's interest at the time of the loss, that does not preclude her from recovering her "interest at the time of the loss" in the event the mortgagee extinguishes its interest. Under *Tech Land*, that interest is the full value of the property.

Of course, Nationwide would not have been liable to both Financial Freedom and

Christmas if Financial Freedom had not extinguished its interests at the foreclosure sale. That result is obviously precluded by the insurance contract and *Tech Land*. *See id.* at 569, 291 S.E.2d at 823 ("When insured property is damaged prior to foreclosure, courts allow the purchasing mortgagee to retain under the mortgage clause [of the insurance contract] those proceeds amounting to any deficiency after foreclosure. The mortgagor recovers the remainder of the proceeds."). *Tech Land* indicates that a mortgagee's rights to insurance proceeds are superior to the mortgagor's rights in the event of a loss, up to the amount of the debt. However, *Tech Land* does not stand for the proposition (as Nationwide argues) that the mortgagor's insurable interest is limited to her equity in the property. Instead, as explained above, the mortgagor retains a secondary insurable interest in the full value of the property, and, if the mortgagee extinguishes its interest at a later date, the mortgagor becomes entitled to the proceeds. *See Royal Indem.*, 108 F.3d at 654-55 ("[O]nce a mortgagee's interest in the policy is extinguished through subsequent acts, any interest it had in the policy reverts back to the policy holder or other persons entitled to collect under the policy.")

Throughout all of the lengthy briefing in this case, Nationwide ignores the fact that Christmas paid all of her insurance premium payments and the policy was fully enforceable at the time of the loss. Nationwide is contractually obligated to pay a named insured the dwelling replacement payment in these circumstances. Contrary to Nationwide's argument that it would be an "inequitable result" for Christmas to recover, Nationwide is the one that would be unjustly enriched if it does not pay Christmas in these circumstances. *See Royal Indem.*, 108 F.3d at 656 ("To hold [that the insurance company is not liable to the mortgagor if the mortgagee extinguishes its interest] would mean that Royal Indemnity would not have to pay anyone for

10

most of the value of the insurance policy on the dwelling, a result that is clearly at odds with the premiums paid to it. . . . In fact, [if the court were to hold the insurance company is not liable in these circumstances], we believe that Royal Indemnity would be the one unjustly enriched."); *Sprouse v. N. River Ins. Co.,* 81 N.C. App. 311, 322, 344 S.E.2d 555, 563 (1986) ("Defendant contracted and accepted premiums to cover the fire damage, not particular property interests. The Sprouses remained liable on the entire note, and Mid-State had a valid claim for that amount. How the Sprouses and Mid-State divided the proceeds is immaterial to the insurer.").  While it is true that Christmas's mortgage debt has been cancelled and now she will receive the dwelling replacement payment, that fact does not mean Nationwide is entitled to accept insurance payments from Christmas, insure her against the precise loss that occurred in this case, and then refuse to pay her when she has a legitimate claim.

In sum, the court finds that Christmas is entitled to the dwelling replacement payment in these circumstances.  Under North Carolina law, Christmas retained an insurable interest at the time of the loss and her insurable interest was not limited to the equity she had in the property at the time of the loss.  While the contractual language contemplates apportioning payment between two named insured as the interests existed at the time of the loss, subsequent acts by the mortgagee can extinguish its interest in the insurance proceeds.  In that circumstance, Nationwide must pay the other named insured on this valid insurance contract.  To hold otherwise would allow Nationwide to accept payments on a policy and then refuse payment under the policy despite a valid claim.

## D.  Dwelling Replacement Cost

Because Nationwide breached the insurance contract by failing to pay Christmas the

11

dwelling replacement cost, the measure of damages in this case will be the cost of replacing or repairing the property. Of course, this is limited by the total dwelling replacement coverage limit of $213,905. However, within that limitation, the parties vigorously dispute the total replacement cost. Christmas argues the house is a total loss and will need to be demolished and rebuilt from scratch. She estimates the cost of replacing the property will be $204,500. She arrives at this figure using an appraisal report by John Neese [DE-63-1] and a Broker Price Opinion by Rochelle Moon [DE-63-2], each of whom indicate that the property is a total loss. Christmas has also identified an expert witness, Mr. George Raynor, III, who has 41 years experience in the construction business, and who estimates the total cost to rebuild the home will be approximately $204,500. Nationwide maintains the home is not a total loss and the cost of repairing the property is $94,842.88, relying on an investigation by its adjustor, Frank Baker, and an appraisal report by Joel Tate.

Nationwide seeks exclusion of all the evidence Christmas relied on in determining her replacement cost. Nationwide argues the reports from Ms. Moon and Mr. Neese are inadmissible hearsay and that Raynor's expert opinion is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Christmas responds that Raynor's testimony satisfies the *Daubert* standard and that the business records exception to the hearsay rule renders the Moon and Neese affidavits admissible.

As Nationwide notes, the admissibility of Raynor's testimony must be analyzed under the Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The court, in its "gatekeeping" role, must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or

12

methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The plaintiff bears the burden of proving its proffered expert satisfies the *Daubert* standard. *Dunn v. Sandoz Pharms. Corp.*, 275 F. Supp. 2d 672, 676 (M.D.N.C. 2003).

In light of the significance of these issues,[2] the court will set a pretrial hearing to determine the admissibility of Raynor's opinion under the *Daubert/Kumho Tire* framework. The parties are directed to read the *Daubert* and *Kumho Tire* opinions and research how other courts have addressed the admissibility of expert construction contractor testimony under *Daubert*. The parties should also file additional briefing on this issue prior to the hearing. At the hearing (the parameters of which are explained below), the parties will also be afforded an opportunity to argue all of their evidentiary objections related to the cost of replacing Christmas's home, including the admissibility of the Moon and Neese affidavits. As noted below, it appears Christmas also challenges the reliability of the Joel Tate appraisal, which Nationwide relied on to some degree in determining the $94,842.88 replacement cost. Assuming this is also a *Daubert* objection, the parties should also address this at the hearing and in the pretrial briefing.[3] Finally, the parties also should be prepared to address at the hearing whether a trial is necessary in the event the court excludes Raynor's opinion.

## E. Living Expenses

Christmas also maintains that she is entitled to further living expenses payments as a result of Nationwide's breach. The relevant policy provision reads, "[Nationwide will cover

---

[2] Indeed, it appears to the court that if Raynor's testimony/report is excluded, Christmas has no other evidence of the replacement cost

[3] The court will not set a specific page limitation on this briefing, but the court requests that the parties be as concise as possible. No responses or replies will be allowed.

living expenses] for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere." Nationwide Resp. Br. [DE-58] at 9. It appears Nationwide paid approximately $22,986.07 out of a policy limitation of $34,225 in living expenses. Christmas fails to explain how this amount, paid over a period of seven months, was not sufficient to cover living expenses over "the shortest time required to repair or replace the damage or [to] permanently relocate." As Nationwide notes, this language does not require it to pay living expenses indefinitely.

The language also does not condition the living expenses payment on the payment of the replacement cost of the property. *See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) ("'[I]f the meaning of policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written . . . .'"); *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978) (same). It appears to be Christmas's position that the "shortest time required to repair or replace the damage" has not expired because she is not financially able to repair the property without the replacement payment. But that interpretation exposes Nationwide to indefinite liability every time an insured is not financially able to pay for the repairs. Suppose, for example, that Financial Freedom had not extinguished its interest in this case and it received the full dwelling replacement cost payment. Under Christmas's interpretation of the living expenses clause, she would be entitled to indefinite living expenses (up to the policy limitation) because Nationwide did not disburse the replacement cost to her and she was not otherwise financially able to make the repairs herself. As Nationwide notes, that result is inequitable. The more natural reading of the living expenses clause is that Nationwide will pay living expenses for the shortest time period required to repair

14

the property or permanently relocate generally, without regard to the insured's financial ability to fully rebuild the damaged property. Under this interpretation, Christmas must show that seven months was not sufficient time to repair the property or permanently relocate. Christmas fails to address this issue and therefore she has not satisfied her burden of demonstrating that Nationwide breached the living expenses clause of the contract.[4] Accordingly, Nationwide is entitled to summary judgment on Christmas's request for additional living expenses payments.

## F. Unfair and Deceptive Trade Practices

Christmas also brings a claim under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1 *et seq.* To establish a violation of North Carolina's UDTPA, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff. *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "When an insurance company engages in conduct manifesting an inequitable assertion of power or position, including conduct which can be characterized as unethical, that conduct constitutes an unfair trade practice." *Johnson v. First Union Corp.*, 128 N.C. App. 450, 458, 496 S.E.2d 1, 6 (1998) (internal quotation marks omitted). Although not required to maintain a UDTPA claim, courts

---

[4] Christmas fails to explain in any detail why she is entitled to additional living expenses in her brief, apparently assuming that she is automatically entitled to them because Nationwide breached the dwelling replacement clause. Because the parties specifically separated the living expenses and replacement cost provisions in the contract, and neither provision is conditional on payment under the other, Christmas must demonstrate that Nationwide breached the living expenses provision itself to be entitled to additional living expense payments. *See Rouse v. Williams Realty Bldg. Co. Inc.*, 143 N.C. App. 67, 69-70, 544 S.E.2d 609, 612 (2001) ("[W]hen presented with [insurance] policy language that is explicit, [o]ur courts have a duty to construe and enforce the policy as written, without rewriting the contract or disregarding the express language used." (internal quotation marks omitted)). This, Christmas has not done.

15

often look to North Carolina's insurance law statutes to determine if a particular practice is unfair or deceptive within the meaning of the act. *Country Club of Johnston Cnty., Inc. v. United States Fid. & Guar. Co.*, 150 N.C. App. 231, 243-44, 563 S.E.2d 269, 277-78 (2002). As relevant here, in *Gray* the North Carolina Supreme Court concluded that a violation of North Carolina General Statute 58-63-15(11)(f) is an unfair and deceptive trade practice under § 75-1.1. *Gray*, 352 N.C. at 73, 529 S.E.2d at 684. Section 58-63-15(11)(f) prohibits "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Id.*

A reasonable jury could not find that Nationwide violated North Carolina's UDTPA. Upon receiving notice of the fire, Nationwide immediately initiated an investigation and provided Christmas with emergency funds to assist her with living expenses during the investigation. Under the personal property and living expenses policy provisions, Christmas (or vendors acting on her behalf) were paid approximately $91,600. Christmas does not seriously dispute that she has been treated fairly with respect to these payments. Christmas Depo. [DE-47-3] at 73. There is no record evidence that Nationwide's refusal to pay the dwelling replacement cost was anything more than an honest belief that Nationwide did not owe the payment. The law in this area is not entirely settled and it is possible that an appellate court could accept Nationwide's argument that Christmas's insurable interest at the time of the loss was limited to her equity in the property. Given the uncertainty of whether Nationwide even owed the insurance payment in this case, there is nothing in the record suggesting Nationwide was "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Gray*, 352 N.C. at 73, 529 S.E.2d at 684. Although Christmas lists a

16

variety of alleged violations of § 58-63-15(11), most of them fail for the same reason: there is no

evidence in this case that Nationwide's denial of her claim was anything more than a reasonable

(if potentially erroneous) interpretation of the relevant law.[5]  Accordingly, Nationwide's motion

for summary judgment as to the unfair and deceptive trade practices claim is ALLOWED and the

claim is DISMISSED.

### III.  REMAINING MOTIONS

Christmas also moves to have eighty-three of her requests for admissions deemed

admitted [DE-70].  This motion is DENIED.  Counsel submitted 108 requests for admissions in

this case and Nationwide stopped providing a substantive response after the twenty-fifth request,

erroneously believing that the parties' Rule 26(f) report contained a limit on the number of

requests for admissions.  Instead of conferring with Nationwide in an attempt to resolve the issue

and (assuming that did not work), filing a motion to compel responses, counsel waited until the

summary judgment briefing to argue that each of these eighty-three responses should be deemed

admitted.  The court would only consider deeming these requests for admission admitted if there

was some record evidence of the parties' good faith attempts to resolve this issue during

discovery and, failing that, a motion to compel responses.  Waiting until the summary judgment

briefing to argue that the these requests should be deemed admitted is gamesmanship.[6]

---

[5]  Christmas's remaining allegations of UDTPA violations are also without merit.  For example,
Christmas argues Nationwide's decision to stop payment on the check prior to the 180-day expiration
period is an unfair and deceptive trade practice.  But Christmas fails to acknowledge that Nationwide
stopped payment on the check after she called Nationwide and asked to have Financial Freedom removed
from the check.  In these circumstances, it was entirely appropriate for Nationwide to stop payment on
the claim and investigate who should receive the proceeds.

[6]  The court has also reviewed the lengthy list of requests for admissions that Christmas argues
should be deemed admitted.  Except for the handful of requests related to the cost to repair the [cont.]

Christmas has also filed a motion in limine [DE-72] to exclude various witness affidavits Nationwide submitted in support of its motion for summary judgment and to exclude these witnesses' testimony at trial. The first affidavit is from Nationwide's expert James Pendergrass, who submitted a lengthy affidavit in which he discussed Christmas's insurable interest at the time of the loss. Christmas seeks to exclude this affidavit because it allegedly offers a legal conclusion. In light of the court's ruling above, it appears this issue is moot. The sole issue remaining in this case for trial is the amount of the dwelling replacement payment Nationwide owes Christmas. It does not appear Pendergrass's affidavit is relevant to that issue and the motion to exclude his affidavit is therefore DENIED AS MOOT. For the same reason, the request to exclude the deposition testimony of Scott Brown is also DENIED AS MOOT. As explained below, if Christmas believes any of Brown or Pendegrass's affidavits/testimony are pertinent to the remaining issue in this case and wishes to object on the basis that their testimony offers only legal conclusions, she may do so prior to trial.

Christmas also seeks to exclude various appraisal reports from Joel Tate. Because the court has found that a genuine issue of material fact exists as to the dwelling replacement cost, the admissibility of the appraisal reports will need to be decided prior to trial. However, as explained above with respect to Nationwide's request to exclude the testimony of Christmas's expert, the court will address this issue with the parties in the context of a pretrial *Daubert* hearing. Ruling on the admissibility of the Tate appraisals without holding a *Daubert* hearing would be premature at this juncture and prejudicial to Nationwide (just as ruling on the

_____

property, none of the requests, assuming they were deemed admitted, would have affected the court's ultimate decision in this case.

admissibility of Christmas's expert without giving her a full opportunity to be heard on her expert's reliability would be prejudicial to Christmas). Accordingly, the motion in limine [DE-72] is DENIED without prejudice to raise the issues again at the pretrial hearing (explained in more detail below).

Finally, for the first time in her summary judgment brief, Christmas argues she is entitled to damages for her emotional distress. Although emotional distress damages are available in a limited class of breach of contract actions in North Carolina, this is not one of those cases. *Johnson v. Ruark Obstetrics & Gynecology Assocs.*, 327 N.C. 283, 301, 395 S.E.2d 83, 96 (1990). The request for emotional distress damages is therefore DENIED.

## IV. TRIAL SCHEDULING

For the foregoing reasons, the sole issue remaining in this case for trial is the dwelling replacement cost, which will be the measure of damages for Nationwide's breach of contract. Because the UDTPA claim has been dismissed, there is no basis for punitive or "treble" damages in this case. Although the court does not perceive a reason for granting attorney's fees in this standard breach of contract action, a motion for attorney's fees should be brought after the close of the case. *See* Fed. R. Civ. P. 54(d).

This matter is set for trial during the undersigned's August 4, 2014 term of court. As the court has previously explained, the undersigned does not hold separate criminal and civil terms of court. That means each term of court will begin with approximately a week of criminal matters, which may include some criminal trials. Criminal trials always take precedence over civil trials due to constitutional and statutory speedy trial requirements. Therefore, this trial likely will not begin until at least August 11, 2014 and potentially later. Approximately a week

19

before the term is set (in this case, the week of July 28), the court will have a better idea of its criminal schedule and it will communicate with the parties regarding setting a more definitive date. To the extent possible, the court will attempt to accommodate the parties' schedules. However, if the parties must have a date certain for the trial prior to that time, they are free to consent to magistrate judge jurisdiction.

As explained above, there are a number of outstanding issues regarding the admissibility of the expert testimony in this case. The court's practice for civil trials is to schedule a pretrial hearing, in which it will rule (to the extent possible) on all evidentiary issues prior to trial. This will include the court's *Daubert* gatekeeping responsibilities. The court will set this hearing for **August 6, 2014**,[7] though it may need to change this date depending on the court's criminal calendar. In preparation for this hearing, the parties must complete the following **on or before August 4, 2014**:

1. Each party shall file any motions in limine and the required pretrial briefs related to the court's gatekeeping function under *Daubert*. As explained above, if Christmas intends to challenge the Tate appraisal on *Daubert* grounds, the parties should address this issue in the pretrial briefing in addition to the admissibility of the Raynor testimony.

2. Each party shall submit to chambers, the deposition transcript, reports and curriculum vitae of each opinion[8] witness that the party intends to call at trial, whether as a live witness, or by written or video deposition. No witness whose materials are not presented to the court as

---

[7] The court will ensure the parties have a full day to address these issues. The date is also relatively firm. The court will contact the parties if an emergency criminal matter necessitates rescheduling but that is unlikely.

[8] The parties are advised that this court refers to "expert" witnesses as "opinion" witnesses.

20

herein directed will be permitted to testify at trial in person or through deposition.

3. The parties shall jointly submit to chambers the depositions of any witness whose testimony at trial will be presented via deposition, with the objections of Christmas underlined in green, and the objections of Nationwide underlined in red.

The parties are reminded that the proposed pretrial order is also due on **July 14, 2014.** The court recognizes the parties have already submitted a proposed pretrial order at docket entry 84. However, that order should be modified to reflect the sole remaining issue in this case: the amount of the dwelling replacement payment Nationwide owes Christmas. Jury instructions must be submitted four calendar days prior to the trial date. For example, in the event the court schedules this trial for August 11, 2014, jury instructions are due on or before August 7, 2014.

Finally, the court appreciates the parties' patience in waiting for the summary judgment order. The court also recognizes that it is requiring a significant number of submissions from counsel in a relatively short time frame. The court is prepared to try this case during the August 4 term if the parties can be ready. However, if the parties need additional time to work on some of these submissions, the court is open to moving this case (and the pretrial conference) to a later term of court. The court's remaining terms of court in 2014 include: September 29, 2014, November 3, 2014, and December 1, 2014. As explained above, the trial would not start until approximately one week after these dates, at the earliest. The parties should file a motion to continue if they want to move the case to a later term of court. If no motion to continue is filed before the proposed pretrial order is due, the parties must submit that order by the deadline.

## V. CONCLUSION

For the foregoing reasons, the parties' cross motions for summary judgment [DE-45, -49]

21

are both ALLOWED in part and DENIED in part. Christmas's motion for summary judgment [DE-49] is ALLOWED as to liability on the breach of contract claim and DENIED as to the UDTPA claim. Nationwide's motion for summary judgment [DE-45] is ALLOWED as to the UDTPA claim (count two) and DENIED as to the breach of contract claim. The sole remaining issue in this case is the damages Nationwide owes to Christmas for breaching the contract, measured solely by the cost of replacing or repairing the property. Plaintiff's motion to file evidentiary documents out of time [DE-55] is ALLOWED, but her motion to deem statements admitted by Nationwide [DE-70] is DENIED. Plaintiff's motion to exclude affidavit and testimony of Defendant's experts [DE-72] is DENIED. The Clerk of Court is DIRECTED to schedule and notice a pretrial hearing in this case for August 6, 2014.

SO ORDERED.

This the ___7___ day of July, 2014.

JAMES C. FOX
Senior United States District Judge